1
2
3
4
5
6
7

8

## UNITED STATES DISTRICT COURT

9

## WESTERN DISTRICT OF WASHINGTON

10

## SEATTLE DIVISION

11

12   SECURITIES AND EXCHANGE COMMISSION,

No. 2:17-cv-01344

13                     Plaintiff,

14       v.

**COMPLAINT**

15   BRETT KENNEDY, MAZIAR REZAKHANI, and
SAM SADEGHI,

16

                     Defendants.

17

18

19

20       Plaintiff Securities and Exchange Commission ("the Commission") alleges:

21                     <u>**SUMMARY OF THE ACTION**</u>

22       1.       In April 2015, Defendants Brett Kennedy ("Kennedy"), Maziar Rezakhani

23   ("Rezakhani"), and Sam Sadeghi ("Sadeghi") (collectively "Defendants") engaged in insider

24   trading in the securities of Amazon.com, Inc. ("Amazon").  Kennedy, an Amazon employee at

25   the time, misappropriated Amazon's confidential Q1 2015 revenue and earnings information and

26   provided it to his college friend Rezakhani.  Rezakhani and his trading partner and adviser

27   Sadeghi then used the material non-public information to trade Amazon securities in advance of

28

COMPLAINT
*SEC V. KENNEDY, ET AL.* (NO. 2:17-CV-01344)

1

**Securities and Exchange Commission**
44 Montgomery Street, Suite 2800
San Francisco, California 94104
(415) 705-2500

1    Amazon's earnings announcement, reaping approximately $116,000 in illegal profits.

2    Rezakhani paid Kennedy $10,000 for the tip.

3         2.      Kennedy, Rezakhani, and Sadeghi violated and, unless restrained and enjoined by

4    this Court, will continue to violate Section 10(b) of the Securities Exchange Act of 1934

5    ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

6                              **JURISDICTION AND VENUE**

7         3.      The Commission brings this action pursuant to Sections 21(d), 21(e), and 21A of

8    the Exchange Act [15 U.S.C. § 78u(d), 78u(e), and 78u-1].

9         4.      This Court has jurisdiction over this action pursuant to Sections 21(d), 21(e),

10   21A, and 27 of the Exchange Act [15 U.S.C. 78u(d), 78u(e), 78u-1, and §78aa].

11        5.      Defendants, directly or indirectly, made use of the means or instruments or

12   instrumentalities of transportation or communication in interstate commerce, or of the mails, or

13   the facilities of a national securities exchange in connection with the transactions, acts, practices,

14   and courses of business alleged herein.

15        6.      Venue is proper in this District pursuant to Section 27 of the Exchange Act [15

16   U.S.C. § 78aa].  Certain of the acts, practices, courses of business, and transactions constituting

17   the violations alleged herein occurred within the Western District of Washington.  Pursuant to

18   LCR 3(e)(1), assignment to the Seattle Division is appropriate because a substantial part of the

19   relevant conduct occurred in King County.

20                              **DEFENDANTS**

21        7.      **Brett Kennedy**, age 26, is a resident of Blaine, Washington.  At the time of the

22   events alleged herein, Kennedy was employed as a Financial Analyst in one of Amazon's

23   divisions, with responsibility for performing financial analysis related to Amazon's bad debt and

24   fraud expenses.  In May 2017, Kennedy resigned from Amazon.

25        8.      **Maziar Rezakhani**, age 28, is incarcerated at a federal correctional facility,

26   serving a five-year sentence following his July 2016 guilty plea to mail fraud, bank fraud, and

27

28

1  tax fraud charges in a criminal matter.[1]  At the time of the events alleged herein, Rezakhani was

2  a resident of Bellevue, Washington and operated businesses engaged in the resale of iPhone and

3  other computer products, among other activities.

4        9.    **Sam Sadeghi**, age 28, is a resident of Newcastle, Washington.  At the time of the

5  events alleged herein, Sadeghi was employed as an engineer, and he also acted as Rezakhani's

6  trading partner and investment adviser, providing securities research and trading advice in

7  exchange for 10% of the profits earned from Rezakhani's securities trading. Sadeghi and

8  Rezakhani referred to each other as "cousins".

9  **RELEVANT ENTITY**

10        10.    **Amazon.com, Inc.** is a publicly-traded company incorporated in Delaware and

11  headquartered in Seattle, Washington.  Amazon's common stock is registered under Section

12  12(b) of the Exchange Act [15 U.S.C. § 78*l*] and listed on the NASDAQ Global Select Market

13  under the ticker "AMZN."

14  **FACTUAL ALLEGATIONS**

15        11.    Kennedy and Rezakhani have been friends since approximately 2009 and were

16  members of the same college fraternity.

17        12.    From approximately 2009 to 2015, Rezakhani operated businesses engaged in the

18  resale of iPhone and other computer products, among other activities.  In early 2015, Rezakhani

19  began conducting more securities trades in his brokerage account and began meeting nearly

20  every morning with Sadeghi to discuss trading strategy and the best trades for Rezakhani to

21  place in his brokerage account.

22        13.    At least by April 2015, Rezakhani and Sadeghi entered into an arrangement

23  whereby Sadeghi conducted securities research and provided trading advice to Rezakhani, and

24  Rezakhani would periodically pay Sadeghi 10% of the profits earned from Rezakhani's

25  securities trading at the end of a given week or month.  Around the same time, Rezakhani and

26  Sadeghi discussed plans to establish a successful track record with the trading in Rezakhani's

27  _____

28  [1] *United States v. Rezakhani*, No. 15-cr-00395-JLR.

1   brokerage account, based on Sadeghi's trading advice, and then together open a hedge fund in

2   New York that would accept investments from other parties and register with the SEC.

3       14.     When Kennedy joined Amazon in 2013, he signed a confidentiality agreement as

4   a condition of his employment that prohibited him from disclosing Amazon's confidential

5   information, which included any information that would typically be included in Amazon's

6   financial statements.  Kennedy received and was subject to company policies against the

7   disclosure of confidential information.  For example, the company's manual prohibited

8   employees from disclosing information about financial data or any other proprietary information

9   that they acquired through their employment.  Kennedy completed training on compliance with

10  these policies.

11      15.     Kennedy also received and was subject to company policies against insider

12  trading.  For example, the company's manual prohibited employees from giving material

13  nonpublic information to friends, family members, or any other third parties because it was both

14  against company policy and against the law.  Amazon's Insider Trading Policy prohibited

15  employees from trading in securities while in possession of material nonpublic information, from

16  passing on material nonpublic information to others without the company's express

17  authorization, and from recommending to others that they trade in securities based on material

18  nonpublic information.  Amazon's Insider Trading Guidelines described "[a]ctual earnings or

19  losses" as an example of material information.

20      16.     During his employment as a Financial Analyst at Amazon, Kennedy had access to

21  Amazon's database of internal financial information.  Although Kennedy was only authorized to

22  review data that related to his own division, he also could access financial information through

23  the database relating to other Amazon divisions and the company as a whole.

24      17.     By April 2015, Rezakhani and Kennedy had discussed the possibility of Kennedy

25  providing Rezakhani with confidential Amazon financial information so that Rezakhani could

26  trade on it profitably.  In April 2015, they agreed that Kennedy would provide Rezakhani with a

27  preview of Amazon's expected earnings announcement for Q1 2015, which would be released

28  publicly on April 23, so that Rezakhani could trade on that information in advance of the

1  announcement.  They agreed that Rezakhani would pay Kennedy for the tip.  The two agreed and

2  arranged to meet on April 20, 2015 so that Kennedy could provide Rezakhani with the

3  confidential information in person.  Before the meeting, Rezakhani informed Sadeghi about the

4  arrangement.

5          18.     On or about April 20, 2015, before the meeting with Rezakhani, Kennedy

6  obtained Amazon's nonpublic Q1 2015 revenue and earnings information by accessing sections

7  of Amazon's financial database that he knew he was not authorized to access and were outside

8  the scope of his employment responsibilities.  Kennedy wrote down Amazon's revenue and

9  earnings numbers for Q1 2015 on a slip of paper to give to Rezakhani.  Kennedy obtained this

10  confidential information without a proper business purpose and without his employer's consent.

11          19.     On the evening of April 20, Rezakhani drove to Kennedy's home in Seattle and

12  met with Kennedy at or near Kennedy's home.  During this meeting, Kennedy provided

13  Rezakhani with the paper containing Amazon's nonpublic Q1 2015 revenue and earnings

14  information that he obtained from Amazon's internal financial database.  Kennedy knew that

15  disclosing this information to Rezakhani was a violation of his duty to protect Amazon's

16  confidential information and a violation of Amazon's confidentiality and insider trading policies.

17  Kennedy provided the material nonpublic information regarding Amazon's revenue and earnings

18  to Rezakhani with the expectation that he would trade on it in advance of Amazon's earnings

19  announcement.

20          20.     After his meeting with Kennedy on the evening of April 20 and in the days

21  leading up to Amazon's announcement, Rezakhani posted on at least two trading-related internet

22  communication platforms that Amazon's Q1 2015 revenue would be $22.7 billion and Q1 2015

23  earnings per share ("EPS") would be -$0.12, boasting that these were his predictions for

24  Amazon's financial results.

25          21.     After his meeting with Kennedy, Rezakhani told Sadeghi that they should buy

26  heavily in Amazon stock because, based on Kennedy's tip, he understood that Amazon's Q1

27  2015 revenue would beat Wall Street expectations of $22.4 billion and EPS would meet or beat

28

COMPLAINT
*SEC V. KENNEDY, ET AL.* (NO. 2:17-CV-01344)

5

**Securities and Exchange Commission**
44 Montgomery Street, Suite 2800
San Francisco, California 94104
(415) 705-2500

1  Wall Street expectations of -$0.14.  Rezakhani told Sadeghi that they should bet all of the

2  available funds in Rezakhani's brokerage account on Amazon.

3       22.    Sadeghi told Rezakhani that he wanted an opportunity to meet with Kennedy to

4  discuss the information he had provided to Rezakhani.  Rezakhani arranged for another meeting

5  with Kennedy, this time with Sadeghi, so that all three of them could discuss Amazon's expected

6  stock performance.

7       23.    On the evening of April 22, Rezakhani and Sadeghi drove together to Kennedy's

8  home in Seattle and met with Kennedy at or near Kennedy's home.  Rezakhani introduced

9  Sadeghi to Kennedy as his cousin and financial adviser, and the three discussed details regarding

10 the information that Kennedy had provided.  Sadeghi understood that Kennedy had obtained this

11 information from Amazon's internal financial database and that Rezakhani was going to pay

12 Kennedy for the tip.  Rezakhani and Sadeghi asked Kennedy for additional nonpublic Amazon

13 financial information, which Kennedy did not provide.  By the end of the meeting, Rezakhani

14 agreed to pay Kennedy $10,000 in exchange for the tip, and Rezakhani told Kennedy that he

15 would have paid more for additional or more significant nonpublic information.

16      24.    On the morning of April 23, Rezakhani sold securities in his brokerage account to

17 free up available funds and placed orders to purchase 4,400 shares of Amazon for $1.715

18 million.  Around the same time, Rezakhani posted the revenue and EPS numbers again on an

19 internet platform and boasted that the "numbers are so obvious" that a "5 year old can guess

20 what they will do."

21      25.    When the market closed at 1:00 p.m. PT on April 23, Amazon announced its

22 financial results for Q1 2015, which included revenue and earnings numbers that matched the

23 ones Kennedy had given Rezakhani, and Amazon's stock price immediately increased.  On the

24 first trading day after the announcement, Amazon's stock price increased from $389.99 at the

25 close of the market on April 23 to $445.10 at the close of the market on April 24 (a 14%

26 increase), reaching a twelve-month high on volume 5.8 times its daily average.

27

28

COMPLAINT
*SEC V. KENNEDY, ET AL.* (NO. 2:17-CV-01344)
6
**Securities and Exchange Commission**
44 Montgomery Street, Suite 2800
San Francisco, California 94104
(415) 705-2500

26.     Immediately after Amazon's announcement, beginning at 1:01 p.m. PT on April 23, Rezakhani and Sadeghi celebrated over text messages that Amazon's stock price had in fact begun increasing.  Sadeghi advised Rezakhani to sell the Amazon stock quickly.

27.     At or around 1:03 p.m. PT on April 23, in after-hours trading, Rezakhani sold all 4,400 shares of Amazon for $1.831 million, resulting in a profit of approximately $116,000.

28.     Based on their compensation agreement, Sadeghi was entitled to receive 10% of the profits that Rezakhani earned from his securities trading that week, including the profits from the Amazon trades.  Sadeghi received compensation from Rezakhani over time in a mix of gifts and cash.

29.     In or about May 2015, Rezakhani paid Kennedy $10,000 in cash for the tip.

30.     At the time of the relevant conduct described above, Kennedy acted with scienter. Kennedy knew, or was reckless in not knowing, that he owed a duty to Amazon to keep its nonpublic information confidential.  Kennedy breached his duty of confidentiality to Amazon by providing the material nonpublic information to Rezakhani and Sadeghi with the intent that they trade Amazon securities.

31.     At the time of the relevant conduct described above, Rezakhani acted with scienter.  Rezakhani traded Amazon stock on the basis of material nonpublic information and he knew, or was reckless in not knowing, that the information was material and nonpublic.  He also knew, was reckless in not knowing, or should have known that Kennedy provided the information in breach of Kennedy's duty of trust or confidence to Amazon and for Kennedy's personal benefit.

32.     At the time of the relevant conduct described above, Sadeghi acted with scienter. Sadeghi participated in the scheme to trade Amazon stock on the basis of material nonpublic information and he knew, or was reckless in not knowing, that the information was material and nonpublic.  He also knew, was reckless in not knowing, or should have known that Kennedy provided the information in breach of Kennedy's duty of trust or confidence to Amazon and for Kennedy's personal benefit.

**Securities and Exchange Commission**
44 Montgomery Street, Suite 2800
San Francisco, California 94104
(415) 705-2500

33.     The information Kennedy provided to Rezakhani and Sadeghi was material because it would have been important to a reasonable investor in making his or her investment decision.  There is a substantial likelihood that the disclosure of the material nonpublic information would have been viewed by a reasonable investor as having significantly altered the total mix of information available to investors.

## CLAIM FOR RELIEF

### Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder

### (Kennedy, Rezakhani, and Sadeghi)

34.     The Commission realleges and incorporates by reference paragraphs 1 through 33, as though fully set forth herein.

35.     By engaging in the conduct described above, Kennedy, Rezakhani, and Sadeghi, in connection with the purchase or sale of securities, directly or indirectly, by the use of the means or instrumentalities of interstate commerce, or of the mails, or of the facilities of a national securities exchange, with scienter:

      (a)     employed devices, schemes, or artifices to defraud;

      (b)     made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and/or

      (c)     engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons, including purchasers and sellers of securities.

36.     By engaging in the foregoing conduct, Kennedy, Rezakhani, and Sadeghi violated Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

COMPLAINT
*SEC V. KENNEDY, ET AL.* (NO. 2:17-CV-01344)

8

**Securities and Exchange Commission**
44 Montgomery Street, Suite 2800
San Francisco, California 94104
(415) 705-2500

**PRAYER FOR RELIEF**

WHEREFORE, the Commission respectfully requests that this Court:

I.

Permanently restrain and enjoin Defendants from, directly or indirectly, violating Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5];

II.

Order Defendants to disgorge all ill-gotten gains or unjust enrichment derived from the activities set forth in this Complaint, together with prejudgment interest thereon;

III.

Order Defendants Rezakhani and Sadeghi to pay civil monetary penalties under Section 21A of the Exchange Act [15 U.S.C. § 78u-1];

IV.

Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court; and

V.

Grant such other and further relief as this Court may deem just, equitable, and necessary.

Dated:  September 7, 2017

                                        Respectfully submitted,

                                         _/s/ Sallie S. Kim_____
                                        Sallie S. Kim (Conditionally Admitted
                                        Pursuant to LCR 83.1(c)(2))
                                        Securities and Exchange Commission
                                        44 Montgomery Street, Suite 2800
                                        San Francisco, California  94104
                                        Telephone:  (415) 705-2500
                                        Facsimile:  (415) 705-2501
                                        Email:  KimSal@sec.gov
                                        *Attorney for Plaintiff Securities and*
                                        *Exchange Commission*